ANNA HENRIETTA KING vs. CHARLES N. TALBOT, executor, and DAVID C. OLYPHANT, administrator &c. of D. W. C. Olyphant, executor of Charles W. King, deceased.

Where an executor, upon an infant legatee becoming of age, transferred to her certain stocks and bonds as and for her legacy, together with a memorandum of her securities, and a statement of her account, and the legatee at the same time expressed her unwillingness to accept said stocks and sign a receipt therefor, and a few days afterwards, by her counsel, she notified the executor that such bonds and stock certificates were not accepted by her, and that she required payment of the amount of her legacy, and shortly thereafter she wrote personally to the executor, offering to deliver such bonds and certificates to him, notifying him that so long as said bonds and certificates were left with her, they would be held only for his account and for his risk; *Held*, that there was no such acceptance by the legatee, of such stocks and bonds as to estop her from repudiating the investments, and calling the executors to account.

Where a trustee fails to execute a trust, and invest money for the maintenance of an infant during minority, and to *accumulate* the surplus income of the investments, equity will charge interest against him *with rests*, though he may not have used the trust money, and independent of any question of intention.

The general rule is that when a parent bequeaths a sum of money to a child, and provides for its maintenance *out of the interest* of such legacy, and makes no other provision for its maintenance, such legacy will carry interest from the testator's death.

It is a settled rule of the English court of chancery, when the *cestuis que trust* are adults, that the investment must be made in the public funds, or in real estate, though the trust instrument commits the investment to the discretion of the trustee.

And the result of the English cases is, where the investment is left to the general discretion of the trustee, that nevertheless the investment must be made within the rule requiring the investment to be made in the public funds, or in real estate securities.

It seems that the English rule was adopted, by analogy, in *Ackerman* v. *Emott,* (4 *Barb.* 626,) and a rule laid down in that case, that in the absence of specific directions in the trust instrument, trust funds must be loaned on, or invested in, real estate securities, or invested in government securities or stock.

A testator, by his will, gave to each of his three children, (who were all minors,) "the sum of $15,000, the *interest* on the same, *so far as required,* to be applied to their maintenance and education, and the principal, with *the accumulations thereof,* to be paid to them severally, on their majority," en-

King *v.* Talbot.

trusting to *the discretion* of his executors the settlement of his estate, for the benefit of his heirs.

*Held* 1. That the discretion given to the executors, was the discretion of trustees over a trust fund to be invested for the benefit of infants, and they were to be maintained and educated out of *interest,* not out of dividends; and that any surplus income to be accumulated was surplus of interest, not ·of dividends.

2. That the executors were not authorized to invest in canal, railroad, or bank stocks, or in railroad bonds, or the stocks of other states; and that a legatee was not bound to accept such stocks or bonds of corporations as and for investments of her legacy with its accumulations of interest.

It will not do to say that a trustee can deal with trust funds as with his own, and that he is to be excused if he invests them as he does his own, in railroad, petroleum, or mining stocks, though the investment is left by the trust instrument to his discretion, generally. *Per* SUTHERLAND, J.

It is not true, either in morals or law, that a trustee is not bound to take greater care of trust funds than he takes of his own. He has no right to speculate with trust funds; and every investment in stocks of a railroad, mining, banking, or other private corporation must be looked upon as an *adventure. Per* SUTHERLAND, J.

Railroad bonds, though nominally secured by mortgage on track and rolling stock, should not be regarded as real security, within any rule adopted or to be adopted. *Per* SUTHERLAND, J.

CHARLES W. KING, the defendants' testator, died September 26, 1845, leaving surviving Charlotte E. King, his widow, and three children, the plaintiff, aged five years and five months, William, Vernon, and Arthur. By his will, made at Macoa, China, August 8, 1845, the testator gave to each of his three children "the sum of $15,000, *the interest* on the same, *so far as required,* to be applied to their maintenance and education, and the *principal,* with *the accumulations thereon,* to be paid to them severally on their majority." He appointed five executors, "entrusting to *their* discretion the settlement of my affairs, and the investment of my estate for the benefit of my heirs." Only *two* of those appointed executors qualified, viz. *Talbot* and *Olyphant,* to whom letters testamentary were issued on December 5, 1846, by the surrogate of New York, who admitted this will to probate. This action was brought by the plaintiff, as one of the legatees of the testator, against the defendants as

such executors for an account of their acts and dealings with the moneys and funds of the estate, and of the portion thereof set apart by them for the payment of legacies and its increase and accumulations ; to have certain transfers of stock made to the plaintiff by the defendant Charles N. Talbot, surviving executor, and the receipt given by her therefor, set aside ; that Charles N. Talbot be adjudged to pay to the plaintiff the amount of moneys invested by him in certain railroad, bank and canal company stocks, with interest and all profits realized thereon ; for an account of what was due and owing to the plaintiff for the principal and interest of her legacy, its accumulations, &c. and of the dealings of the executors therewith ; and for a decree directing the payment by the defendants of what might appear to be due to the plaintiff, with costs, &c.

The answer of the defendants put in issue the material allegations of the complaint.

The following facts were found by the justice before whom the action was tried :

1st. That Charles W. King died, September 26, 1845, on a voyage from Ceylon to Suez, leaving a widow and three children—the plaintiff, Wm. V. King, and Arthur King— him surviving.

2d. That the deceased left a will, dated August 1, 1845, as set forth in the answer in this action ; that said will was duly proved in the court of chancery of this state, October 30, 1846, and admitted to probate by the surrogate, December 5, 1846, and letters testamentary issued to David W. C. Olyphant and Charles N. Talbot, two of the executors named in said will ; that said executors accepted and undertook the execution of said trust, and possessed themselves of the estate at various times prior to December 31, 1849, and in various sums amounting, in the whole, to about $105,955.33.

3d. That said executors, on the 16th day of December, 1847, filed in the office of the surrogate of New York an

inventory of the personal estate of said testator, which is copied in schedule No. 1 to the complaint.

4th. That between March 5 and December 19, 1847, the said executors invested in United States treasury notes and Ohio state bonds a sum exceeding $45,000 moneys of said estate ; that between August 1, 1848, and November 10, 1849, said executors sold $41,986 of said investment at a profit of $1312.77 ; that said executors reinvested the money realized from said sales in Delaware and Hudson Canal Company stocks, Saratoga and Washington Railroad Company stocks, New York and New Haven Railroad Company stocks, Harlem Railroad Company stocks, Hudson River Railroad Company stocks and bonds, and the Bank of Commerce stock and scrip, for account of said children.

5th. That on the first day of April, 1850, said executors set apart for said children, as an investment of their legacies, the following stocks and bonds, constituting a portion of the aforesaid investment, at an estimated valuation equal to the price paid by said executors therefor :

*uu*

| | |
|---|---:|
| $4000 Ohio 7 pr. ct. stocks at 103 and ¼ brokerage | $4,130 00 |
| $3500 Ohio 5 pr. ct. stocks at 92 and ¼ brokerage | 3,228 75 |
| 45 shares stock Del. & Hud. Canal Co. ⎱ 5 " scrip Del. & Hud. Canal Co. ⎰ | 7,758 75 |
| 40 " stock Sar. & Wash. Railroad Co. | 3,411 70 |
| 200 " preferred stock N. Y. & Har. Railroad Co. | 10,025 00 |
| $10,000 bonds Hudson River Railroad Co. | 9,687 50 |
| 125 shares scrip and stock Bank of Commerce, | 4,306 25 |
| 30 " stock N. Y. & N. H. Railroad Co. | 2,482 50 |
| Making a total of | $45,390 45 |

And opened an account of said investment with said children, debiting said account with said sum, and the income there-

from, and crediting the same with payments made for the support and maintenance of said children.

6th. That on the 21st day of December, 1849, the said executors, out of the proceeds of the stocks, &c. so set apart, paid an installment of $300 upon said Delaware and Hudson Canal Company shares ; that between June, 1850 and 1851, said defendant Talbot, with proceeds as aforesaid, paid several installments upon the aforementioned shares, amounting in the aggregate to $1600 ; that with proceeds as aforesaid, said Talbot purchased, October 9, 1851, six shares of the New York and New Haven Railroad Company stock at $607.92.

7th. That said executors continued to hold said stocks and bonds so set apart, and those since purchased, except as hereinafter stated, until the plaintiff reached her majority ; that the Ohio 7 per cents were redeemed January, 1852 ; twenty-five shares Bank of Commerce scrip sold April 25, 1852 ; the Ohio 5 per cents were redeemed January, 1857 ; that the proceeds of the above were invested by the defendant Talbot in other stock of the Bank of Commerce, and in two bonds of the New York Central Railroad Company.

8th. That at the time these investments were made, and at the time these stocks and bonds were set apart, as well as at the time others were subsequently purchased, said stocks and bonds were in good repute, and were considered by men upon whose judgment it was proper to rely, as safe and desirable investments ; said investments were made and set apart in good faith ; said executors having invested their own funds in similar stocks, and retained the same, except a small amount of Delaware and Hudson Canal Company, and Saratoga and Washington Railroad Company stocks.

9th. That said D. W. C. Olyphant died in June, 1851, and the defendant Olyphant was appointed administrator of his estate.

10th. That the testator made no provision for the support

of his children, other than that contained in his will ; that from his death to April, 1850, they resided with their mother ; that on the 1st day of April, 1850, the mother presented to said executors bills for expenses incurred by her for the plaintiff's maintenance prior to that date, amounting to $2695.76 ; that said executors paid $2094.48, being the full amount of income then standing to plaintiff's credit on their books, and that the amount unpaid, $601.22, was included in the residuary estate, and paid to the mother of said plaintiff as residuary legatee ; that the income which had been realized from the investments of the estate up to April 1, 1850, was divided by the executors between the mother, as residuary legatee, and the said children in the proportions in which they were entitled to the estate.

11th. That the said plaintiff became of age April 12, 1861 ; that from April 1, 1850, until her becoming of age, the said executors paid from the income of said legacy large sums of money to her and for her support, maintenance, and education.

12th. That on the plaintiff's becoming of age, the investment of her legacy stood upon the executors' books, with the cost thereof, as follows :

| | | |
|---|---|---|
| 20 shares of Del. & Hud. Canal Co. stock . . | $2,857 | 66 |
| 66 " N. Y. & Harlem R. R. Co. preferred | 3,308 | 25 |
| 12 " N. Y. & New Haven R. R. Co. stock | 1,150 | 14 |
| 50 " Bank of Commerce . . . . . . . | 4,744 | 63 |
| $3500 Hud. Riv. R. R. Co. bonds . . . . . | 3,390 | 62 |
| $1000 N. Y. Central R. R. Co. bonds . . . . | 920 | 00 |
| Saratoga & Wash. Railroad Co. stock . . . . | 1,137 | 23 |

That, at this time, some of these stocks were below par and depreciated in value, and the stock of the Saratoga and Washington railroad was worthless.

13th. That, on the 16th day of April, 1861, the defendant Talbot transferred to the plaintiff, as and for her legacy, the said stocks and bonds described in the twelfth finding,

King *v.* Talbot.

except the stock of the Saratoga and Washington Railroad Company ; and also, on the same day, handed a memorandum of her securities and a statement of her account ; that, at the same time, the plaintiff expressed her unwillingness to accept said stocks and to sign a receipt therefor.

14th. That, in May, 1861, the plaintiff, by counsel, notified the defendant Talbot that the said bonds and stock certificates, which he had placed in her hands on account of her legacy under her father's will, were not accepted by her, and that she required payment of the amount of such legacy ; that, on the 10th of June, 1861, the plaintiff wrote personally to the defendant Talbot, referring to the aforesaid letter of counsel, and offering to deliver such bonds and stock certificates to said Talbot, and notifying him that so long as said bonds and certificates were left with her, they would be held only for his, said Talbot's, account and for his risk.

15th. That of the stock so transferred by Talbot to the plaintiff, the 66 shares of New York and Harlem Railroad Company preferred, the 12 shares of the New York and New Haven Railroad Company, and the 20 shares of the Delaware and Hudson Canal Company stock were sold in 1863, under a stipulation between the parties, and the proceeds received by said plaintiff, to be applied as by said stipulation provided.

16th. That, treating the Saratoga and Washington Railroad Company stock as a total loss, and estimating the stocks and bonds unsold at their value December 1, 1863, and the proceeds of those sold under the stipulation, the investment set apart for the plaintiff, April 1, 1850, would have repaid the principal and more than six per cent per annum.

17th. That the funds of the said estate were realized by said executors at different times after they accepted their trust, in December, 1846 ; that they did not collect or have

in their hands, for investments, so large an amount as $45,000 until June 9, 1847.

18th. That, between December, 1846, and June 9, 1847, United States 6 per cent stocks were at par, and New York state 6 per cent stocks at ———.

19th. That neither of said executors had accounted before the surrogate for their or his administration of the estate of said C. W. King, nor rendered any accounts thereof.

From these facts the judge's conclusions of law were:

1st. That there was no such acceptance by the plaintiff of the stocks and bonds transferred to her by Talbot as to estop her from repudiating the investments and calling upon the executors to account.

2d. That it was the duty of said executors, within a reasonable time after the receipt of a sufficient amount of funds belonging to the estate, to invest the amount of said legacies in stocks of the United States or the state of New York, and have kept the amount so invested during the trust; that not having done so, the investment actually made is invalid, and the executors are personally liable for the whole amount of said legacy, with interest from September 26, 1846, at seven per cent per annum.

3d. That as such omission was without fraud, and the management of the trust conducted in good faith, although the investments are not such as the law approves, the plaintiff must reject all or none of said investments; it would be inequitable, under such circumstances, to allow her to adopt one or more of such securities and reject others, thus accepting the profits and rejecting the losses.

4th. That said Charles N. Talbot, personally, and the estate of the said David W. C. Olyphant, deceased, are accountable and responsible to said plaintiff for her legacy, with interest, as aforesaid. That, in stating the account, the defendants must be debited with said legacy, and the interest from the time aforesaid, computed with annual rests; and be credited with $2094.48, paid for the plaintiff's

support and maintenance previous to April 1, 1850, as of the date when the several items composing such sums were paid, and to a credit of $601.22, which had been advanced by her mother for the plaintiff's support and maintenance prior to April 1, 1850, and which though not paid as such, was included in the residuary estate and paid to the mother as residuary legatee ; also all moneys paid subsequent to April 1, 1850, to the plaintiff or to others for her support, at the time or times when paid ; also the value of all stocks and bonds transferred to the plaintiff, those sold under the stipulations, for the sums received, and at the date of their receipt, and the others at the date of the accounting, unless sooner returned ; also the commissions allowed by law.

5th. That it be referred to Edward Fitch, Esquire, of the city of New York, counsellor at law, as referee, to state the accounts of said executors upon the foregoing principles, with the further direction that said accounts be first stated as above directed, up to April 1, 1850 ; second, from that date up to the death of said D. W. C. Olyphant ; and, third, from that date up to the time of the referee's report.

6th. On the coming in and confirmation of the report, if there should appear to be a balance due the plaintiff from said executors, or from the surviving executor, judgment was directed for such balance against the surviving executor and the estate of the deceased executor, or against the surviving executor solely, or against both defendants, in accordance with the facts as should be reported by the referee, with costs ; and the defendant Charles N. Talbot be discharged from all further duty as trustee for the plaintiff. If no balance was found due the plaintiff on the coming in and confirmation of the report of the referee, then judgment was directed, dismissing the complaint, with costs.

The said referee afterwards found and reported that the defendants were indebted to the plaintiff in the following sums, at the following dates, viz :

1850, April 1, . . . . . . . . . . . $15,608 96
1851, June 1, . . . . . . . . . . 16,250 23
1865, May 26, . . . . . . . . . . . 13,877 06

Exceptions were taken to his report, which were overruled, and the report was ratified and confirmed, and judgment given against the defendants for the amount reported due, with interest and costs.

.Both parties appealed from different portions of the judgment.

*George N. Titus,* for the plaintiff. I. The plaintiff was entitled to an account.

II. She was not estopped by an acceptance of the stocks mentioned in the 12th finding, from repudiating the investments of her legacy money. 1. She did not accept them, (13th finding of fact.) 2. An actual acceptance of them, under the advice given her, without more information than she had received from the executors in regard to those investments, would not have constituted such estoppel. (*Hill on Trustees,* 382, 395. *Munch* v. *Cocherell,* 5 *Mylne & Craig,* 218. *Davis* v. *Hodgson,* 5 *Beav.* 177. *Walker* v. *Symonds,* 3 *Swanst.* 69, 72, 73.) It was the duty of the executors to give her a *full, entire* and *minute account* of his, and his co-executors' administration, before asking an acceptance of their investments. (*Hill on Trustees,* 383. *Fish* v. *Miller,* 1 *Hoff. Ch.* 267. *Rapelje* v. *Hall,* 1 *Sandf. Ch.* 399. *Brewer* v. *Van Arsdale,* 6 *Dana,* 204 ) The account rendered by Mr. Talbot did not answer the requirements of the law. It contained no detailed statement of the acts of the executors ; no intimation that the investments had been made by them. The loss of the investment in the stock of the Saratoga and Washington Railroad Co. was not disclosed. The plaintiff promptly rejected those investments, as she lawfully might, and placed all the securities at the disposal of the executors. (*Matter of Van Horn,* 7 *Paige,* 46.)

III. These executors did not execute the trust created by

the will of Mr. King, which they assumed, and have been justly charged with the legal consequences of its breach. That trust was : 1st. To *invest* the plaintiffs' legacy. 2d. To apply the interest thereof, so far as required, to her maintenance and education ; and 3d. To accumulate the *surplus* interest during her minority. Their first duty, on the acceptance of this trust, was to set apart the sum of $15,000 for her legacy. The law considers specific legacies separated from the general estate, and appropriated at the time of the testator's death. (*Williams on Executors*, 1278, 1284, *and note* 1.) It was equally their duty to have invested that sum, as soon as practicable after letters testamentary were issued, in such securities as the court had approved ; also the interest over the expenses of her maintenance, and to have kept both the principal and surplus interest so invested during the trust. (*Hill on Trustees*, 370, 376, 404.) Before April 1, 1850, they made no separate investment of any part of the estate for either of the children ; at *that* time, the stocks, &c. mentioned in the fifth finding were set apart for them collectively. Between March 5, and December 19, 1847, the executors invested of the funds of the estate over $45,000, in U. S. treasury notes and Ohio stocks ; a part of which they sold between August 1, 1848, and November 10, 1849, at a profit of $1312.77. They apportioned, of this profit, to the children, $557.10, and to Mrs. King, $755.17. They reinvested the money realized from said sales, at different times, in railroad, canal and bank stocks, &c. for account of the estate, not "for account of said children," as found. The investments made in U. S. treasury notes and Ohio state stocks, were such as the law approves, and they had no right to change them. (*Hill on Trustees*, 381, 395. *Depeyster* v. *Clarkson*, 2 *Wend.* 77. *Pocock* v. *Reddington*, 5 *Ves.* 794.) The reinvestments of their proceeds in the railroad, canal and bank stocks, were such as the law condemns, and resulted in heavy losses. (*Ryder* v. *Rickerton*, 3 *Swanst.* 80, *note.*)

IV. The setting apart of the stocks and bonds mentioned in the fifth finding, for the children of the testator, was not, in the judgment of law, an investment of the plaintiff's legacy money, nor to any extent a valid execution of the trust created by the will. 1. They had no right or authority to invest her money in those stocks and bonds ; consequently the appropriation of them to her legacy account was unauthorized and invalid. The law has wisely prohibited the investment of trust money in any thing but government or state stocks, or upon real estate security, unless express direction is given in the instrument creating the trust, to invest in some *specified* mode, or other kind of securities. (*Hill on Trustees*, 368, 9, 378, 395. *Trafford* v. *Boehm*, 3 *Atk.* 441. *Robinson* v. *Robinson*, 11 *Beavan*, 371. *Manth* v. *Leith*, 15 *id.* 524. *S. C.* 16 *Jurist*, 302. *Harris* v. *Harris*, 29 *Beavan*, 107. *In re Colne Valley*, &c., 1 *De Gex, Fisher & Jones*, 53. *Mortimore* v. *Mortimore*, 4 *De Gex & Jones*, 472. *Ackerman* v. *Emott*, 4 *Barb.* 626. *Hemphill's appeal*, 18 *Penn. Rep.* 303. *Worrall's appeal*, 23 *id.* 44. *Smith* v. *Smith*, 7 *J. J. Marsh*, 238. 2 *Story's Eq. Jurisp.* § 1273.) The only investments of trust moneys sanctioned by the law are *loans*, or in the nature of loans, upon interest—the repayment of the sum loaned, with interest, being properly secured. The trustee may not use the trust money in the *purchase* of any kind of property, except the public debt of the government, or bonds secured by real estate. It may not be adventured in any business enterprise, whether of a commercial firm, or an incorporated company. 2. The executors were not authorized by the will of Mr. King to invest in the stocks, &c. mentioned in the fifth and twelfth findings. The will gave no *direction* to make such investment. The intention of the testator, that the investments should be made in securities yielding an "*interest*," was plainly declared. " I give and bequeath unto my three children * * * the sum of fifteen thousand dollars, *the interest on the same*, so far as required, to be applied to their maintenance and edu-

King *v.* Talbot.

cation, and the principal, with any *accumulations thereon,* to be paid to them severally on their majority." Such investments, as he contemplated, were loans of the trust money, upon interest, properly secured. A purchase of stocks of the federal or state government, is essentially a loan to the government, the repayment of which, with interest, is secured in the best possible manner. An investment of this trust money in the shares of railroad and canal companies, or banks, could not have been contemplated by the testator. He entrusted the legacies of his children to the personal care of these executors ; and their duty required them to keep the trust money at all times under their own control. The money, invested by them in the purchase of those shares, was placed beyond their control, and subjected to all hazards incident to the business of those companies. In no event was "interest" payable upon the amounts so invested. Any income resulting therefrom was in the nature of *profits,* produced by the business in which the companies were engaged, and was dependent entirely upon the success of their enterprise, and the integrity of their managers. Such an investment has been declared to be "embarking the trust funds in the speculations of the company." (*Harris* v. *Harris,* 29 *Beavan,* 107. *Hemphill's appeal,* 18 *Penn. Rep.* 303.) This, manifestly, was not the intention of Mr. King. By this clause of the will, "entrusting to their discretion the settlement of my affairs, and the investment of my estate for the benefit of my heirs," the testator did not, by implication, authorize the executors to make such investments as in no event could yield "*interest.*" A discretion expressly entrusted to executors in regard to the investment of an infant's estate, can be lawfully exercised only by investing in such securities as the law has approved. (*Hill on Trustees,* 368, 9. *Trafford* v. *Boehm,* 3 *Atkyns,* 441. *Wilkes* v. *Stewart, Cooper's Ch. Cases,* 6. *Pocock* v. *Reddington,* 5 *Vesey,* 795. *Stratton Ashmall,* 3 *Drewry's Rep.* 9, and cases supra. *Gray* v.

*Fox, Saxton's Rep.* 259.) The general discretion entrusted to trustees in regard to securities for the investment of trust money, has not been enlarged by the testator in this case. If his intention on this point, as expressed in the whole will, is not explicit, the court will interpret the language he has used by the rule of investment which the law has established. (*Hill on Trustees,* 369.) It will not infer an authority to make investments, which he has not expressly directed. (*Adye* v. *Fullerton,* 3 *Swanston Rep.* 83, *note.*) 3. The duty of these executors, in the execution of this trust, was clearly defined by the instrument creating it, and by the law, which has been well settled since the time of Lord Hardwicke. They have departed widely from that rule, which the law had prescribed for its administration; and their unauthorized investments constitute a *further breach of the trust.* (*Hill on Trustees,* 370, 378, 9.) When the executor, Mr. Talbot, transferred to the plaintiff the stocks, &c. there was an actual loss by their depreciation of about $6000:

On 20 shares of Delaware and Canal Co. stock, $1,807 66
On 66 shares New York and Harlem R. R. Co. preferred stock, . . . . . . . . . . . . . 2,103 75
On 12 shares New York and New Haven R. R.    1,150 14
    They were of merely nomial value, of no appreciable worth for sale.
On the Saratoga and Washington R. R. Co. a total loss in 1855, . . . . . . . . . . . . . 1,137 23
The 50 shares of the Bank of Commerce had fallen below the price of investment—$95 each share—and in the following October had further declined to $80 each share; loss by depreciation, . . .   750 00
                              $6,227 78

The Harlem Railroad shares had yielded but one dividend since November 9, 1854. The New Haven Railroad shares had yielded but three dividends of three per cent each, since March, 1853. There was a continued depreciation of their

King *v.* Talbot.

value until the commencement of this action, in October, 1861. The judgment charged the legacy to the executors, and, in effect, transferred the stocks, and all dividends received thereon, to them. 4. The plaintiff was under no obligation to accept from her trustee those stocks on account of her legacy ; they were in no sense her property ; they did not constitute investments of her legacy. When she attained her majority, she was entitled to her legacy with its accumulations, in securities authorized by the law of the trust. (*Pocock* v. *Reddington,* 5 *Vesey,* 800, *Watts* v. *Girdlestone,* 6 *Beavan,* 188. *Ames* v. *Parkinson,* 7 *id.* 377. 2 *Atkyns,* 120. *Eckford* v. *DeKay,* 8 *Paige,* 89. 2 *Story's Eq. Jurisp.* §§ 1262, 1273, *a.*) 5. The original investments made by the executors in the stocks referred to, are regarded by the law, as investments made by them for their own benefit ; and as between them and the plaintiff, they are deemed to have kept her money in their hands uninvested. (*Knott* v. *Cottee,* 16 *Jurist,* 752. *Raphael* v. *Boehm,* 11 *Vesey,* 106, 107.) 6. The ninth exception of the defendant is not well taken. It involves the proposition that the investments shall be deemed as made for the plaintiff's account—that she should take them subject to all *future* fluctuations—and that the executors may atone for their breach of trust by paying as damages " the difference between what the investments as made, actually produced," at a time of unprecedented inflation of the Wall street stock market, " and what would have resulted from an investment" in authorized securities. This proposition is untenable. (*See cases, supra,* 4. *Raphael* v. *Boehm,* 11 *Ves.* 108.)

V. The surviving executor, and the estate of the deceased executor, were rightly charged with the amount of the plaintiff's legacy, with interest, to be computed *with annual rests.* 1. The execution of this trust involved not only the investment of this legacy, but also the *accumulation of the surplus* interest which would have been produced by such investment. That duty was imposed upon these trustees without any

King *v*. Talbot.

*positive* direction in the will. (*Hill on Trustees*, 376, 404.) These executors not having made such investments and accumulation as the law required, are personally responsible for the loss caused thereby. (*Hill on Trustees*, 370.) It is the well settled rule of equity, "that a trustee, directed to do an act from which the *cestui que trust* will derive a particular advantage, not performing that trust, shall be charged precisely in the same manner as if he had performed it." (*Raphael* v. *Boehm*, 13 *Vesey*, 411, *per Lord Erskine. Hill on Trustees*, 404. 2 *Story's Eq. Jurisp.* §§ 1277, 1278.) 2. The neglect of these executors to perform their duty, involved a loss to the plaintiff. Of all the benefit of appreciation of government or state stocks in which her legacy should have been invested between 1847 and April, 1861. Of the interest which would have resulted from such investments ; and of interest from the accumulation of her annual surplus income, had her legacy been invested. 3. In all cases of breach of trust, trustees are charged, in this country, with interest at the legal rate. (*Ackerman* v. *Emott*, 4 *Barb.* 626. *The Utica Ins. Co.* v. *Lynch*, 11 *Paige*, 520.) But in breaches of trust for *investment* and *accumulation*, interest is charged : 1st. Upon the principal sum directed to be *invested*. 2. Upon the annual surplus income directed to be *accumulated*. In this case, the interest upon the legacy being deemed the product of the investments directed to be made, the direction for its computation with annual rests, is manifestly just, and in accordance with the rule of equity. (13 *Vesey*, 411, *supra*.) By this mode of computing, the *surplus interest* remaining at the close of each year, after defraying the plaintiff's annual expenses for maintenance, &c. commissions, &c. is added to the principal, commencing September 26, 1847, thus compounding only that *surplus*, and giving the plaintiff no more than she would have received if the trust had been executed. The cases in which equity directs the computation of interest, against a trustee, with periodical *rests*, may be arranged in two classes, viz : 1st. Cases of

trusts for *investment* and *accumulation.* 2d. Those in which the trustee has in some way used the trust money for his benefit. 1. In cases of the first class, to which the present belongs, he is charged in this manner, so that the *cestui que trust* may obtain all that she would have received from him, at her majority, had he faithfully executed his trust ; not upon the ground of any actual fraud, or bad faith, in its administration. (*Raphael* v. *Boehm,* 13 *Vesey,* 411, *and cases post.*) Whenever a trustee *fails* to execute a *trust to invest* money for the maintenance of an infant during minority and to *accumulate* the surplus income of the investments, as required, equity will charge interest against him, *with rests,* although he may not have used the trust money. (*Newman* v. *Auling,* 3 *Atkyns' Rep.* 579. *Dornford* v. *Dornford,* 12 *Vesey's R.* 127. *Byrne* v. *Norcott,* 13 *Beavan's Rep.* 336. *Knott* v. *Cottee,* 16 *Jurist,* 752. *Lukin's Appeal,* 7 *Watts & S.* 48, 62. *Bowles* v. *Drayton,* 1 *Desaus. Eq. Rep,* 489. *Emmonds* v. *Crenshaw, &c. Harper's Eq. Rep.* 22. *Fall* v. *Simmons,* 6 *Georgia Rep.* 271.) In some cases of this class, the trustee had used the trust money in his business, but the principle stated by Lord Erskine, (*supra,*) pervades all of them. (*Raphael* v. *Boehm,* 11 *Vesey's Rep.* 105. *Jones* v. *Foxall,* 15 *Beavan's Rep.* 388.) 2. The second class of trust cases, in which equity compounds interest against a trustee, embraces all those in which, there being no trust for accumulation, the trustee had used the trust moneys in his business, or had been guilty of fraud or willful misconduct in the administration of his trust, with a view to his own benefit. In all these cases, interest is charged against the trustee, with periodical rests, *as a mode of charging him with all the profits he may have made by his use of the trust funds,* and the *cestui que trust* will be allowed to elect between such interests and the actual profits made out of the trust fund. (*Utica Ins. Co.* v. *Lynch,* 11 *Paige's Rep.* 520. *Pocock* v. *Reddington,* 5 *Vesey's Rep.* 800.) 3. If improper conduct or gross negligence, in the administration of a trust, should be

deemed necessary to subject . the trustee to an accountability for interest with annual rests, both are established in the present case. Before April, 1850, ' they made no investment of the plaintiff's legacy ; it had not been separated from the general funds of the estate. The estate of the testator, at his death, was in possession of the two commercial firms of the executors. Talbot, Olyphant & Co. were debtors to the estate for balance of old account, $21,057.59. On the 16th of December, 1847, Olyphant & Son owed the estate $18,571.03., The latter firm had of the moneys of this estate over $70,000. When they were received by that firm, or whether they were passed to the credit of the executors in the books of that firm, before the stocks in question were bought by Mr. Olyphant, is not in proof. It may not be presumed, *in the absence of proof*, that they were not received before the several times at which they are credited in exhibit E, nor that the moneys of this estate remained idle in the hands of that firm after September, 1845. Before April, 1850, no credit was given to the plaintiff on account of interest upon her legacy. On that day, the amount which should have been placed to her . credit, with interest from the testator's death, was $4725. The amount placed to the credit of her account at that time was only $2094.48, leaving her indebted for maintenance, &c. $601.22. The conduct of a trustee, in the administration of his trust, may be adjudged improper, and gross negligence in regard to his investments of the trust funds may be justly imputed to him, although he may not have used them for his own benefit, or may have invested his own moneys in like securities. The neglect of these executors to make any specific investment of this legacy, prior to April 1, 1850, or to make any subsequent investment on account of the plaintiff, except by appropriating to the legacy account of the children, on that day, the stocks, &c. mentioned in the fifth and twelfth findings, to render any account of their administration of the estate, as required by law ; also the neglect of .the executor, Mr. Talbot, to do any thing to avoid loss from the continued

depreciation of those stocks, establish a strong case of gross negligence, amounting to a breach of trust. (*Byne* v. *Norcott,* 13 *Beavan's Rep.* 336. *Edmonds* v. *Crenshaw, Harper's Eq. Rep.* 224. *Rogers' appeal,* 11 *Penn. Rep.* 41.) The losses, upon the investments made, were not disclosed to the plaintiff. Imperfect information by a trustee to a minor respecting the administration of the trust fund is deemed equivalent to a concealment. (*Walker* v. *Symonds,* 3 *Swanst. Rep.* 69, 72, 73.) The investment of a minor's estate in unauthorized securities, is a wrong act done to her by the trustee ; which alleged good faith will not justify or excuse. (*Hemphill's appeal,* 18 *Penn. Rep.* 303. *Worrall's appeal,* 23 *id.* 44.) Good faith, in regard to the administration of a trust, is a question of law upon the facts proved. It is not predicable of such an administration as this ; and it cannot be rightly adjudged that a series of acts done by a trustee in disregard of the law, indicate good faith on his part in the management of the estate. (*Harper's Eq. Rep.* 224.) Such acts are *per se* evidence of *gross negligence* in the execution of the trust, wholly inconsistent with the idea of good faith. In case of breach of a trust to *invest* or to *accumulate,* it would be unjust to cast upon the *cestui que trust* the loss caused by the acts or omissions of the *trustee,* upon the ground of his alleged good faith in the management of the estate. The trustee, alone, must bear the responsibility and consequences of his own acts.

VI. The defendants should have been charged with interest upon the plaintiff's legacy from the 26th day of September, 1845, the day of the testator's death. The provision made by him for his children, clearly indicates his intention, that their legacies should carry interest from that time. He made no other provision for the maintenance of either of them. 1. It is settled law, that when a parent bequeaths a sum of money *to a child,* and provides for its maintenance out of the interest of such legacy, and makes no other provision for its maintenance, such legacy will carry

interest from the testator's death. (*Williams on Executors,* 1284. *Beckford* v. *Tobin,* 1 *Vesey Sen. Rep.* 308. *Heath* v. *Perry,* 3 *Atkyns' Rep.* 102. *Incledon* v. *Northcote, Id.* 438. *Cooke* v. *Meeker,* 42 *Barb.* 533. *Mole* v. *Mole, Dickens' Rep.* 310. *Carey* v. *Askew,* 2 *Brown's Ch. Rep.* 58. *Cook* v. *Meeker, N. Y. Transcript, Aug.* 24, *MS. case in Court of Appeals.*) 2. This right to interest will not be prejudiced by any delay in the probate of the will, (*Lawrence* v. *Embrée,* 3 *Brad. Sur. Rep.* 364,) nor by the condition of the estate, as that it was unproductive; the legacies carry interest, if there is ever a fund for their payment. (*Williams on Executors,* 1285, 6.) 3. The executors received funds of this estate to an amount more than sufficient for the payment of the specific legacies, with interest from the testator's death.

VII. The defendants are not entitled to a credit of $601.22, for money advanced by Mrs. King for the plaintiff's support, prior to April, 1850. 1. That amount was not paid by the executors. The amount of Mrs. King's bills against the plaintiff to April, 1850, which she presented to the executors, was $2695.70. The only sum they paid to her on that account, was $2094.48. The moneys paid over to Mrs. King, as residuary legatee, were not accepted in payment of this balance; nor did her receipt therefor operate to discharge the plaintiff's liability to pay her that amount. It does not appear that Mrs. King has ever recognized such payment; the judgment in this case cannot affect her, nor protect the plaintiff. 2. There has been no final accounting and settlement between the executors and Mrs. King, as residuary legatee. It cannot be judicially determined here, that they have fully administered this estate, or that they are not now accountable to her for assets, she not being a party to this action. (*Wainwright* v. *Waterman,* 1 *Vesey Jr. Rep.* 311. *Peacock* v. *Monk,* 1 *Vesey Sen. Rep.* 127. 1 *Brown Ch. Rep.* 303. 2 *id.* 87.) 3. The executors have never presented the accounts of their administration for settlement in

the surrogate's court, where only that question can be properly determined, and a decree made which will protect all parties.

VIII. The defendants should have been adjudged accountable to the plaintiff for the following sums, with interest, viz : 1. For her portion of profits on state stocks sold in 1848–9, and placed to her credit by the executors, $185.70. 2. For one third profits on shares of Bank of Commerce, sold in May, 1852, $104.07. 3. For one third gain, upon the redemption of $3500 Ohio fives, in January, 1857, $86.66. In no event will trustees be permitted to make a profit by use of the trust funds. (*Hill on Trustees,* 534.)

IX. The court below erred in crediting the executors " with the value at the date of the accounting," of the shares and bonds which the plaintiff should not return to them. They were entitled to a credit only for *the amount invested therein.*

X. The executors were not entitled by law to commissions upon their unauthorized investments. (*Hemphill's appeal,* 18 *Penn. Rep.* 303. *Worrall's appeal,* 23 *id.* 44.

XI. Upon the accounting before the referee, error was committed by him, in crediting the defendants with interest upon sums paid by the executors, for the support and education of the plaintiff, from the day of such payments respectively, to the 26th day of September next ensuing. 1. Those credits were not authorized by the judgment. The direction in the judgment to state the accounts with "annual rests' at the 26th of September in each year, means, that on that day in each year, the income of the fund and the outgo for the plaintiff are to be balanced, and the resulting balance carried forward, as of that day, to one side or the other of the account, as the facts may warrant, which balance thenceforward is to carry interest. " Upon yearly rests the master calculates interest upon the last year's balance for the whole year ; but then, being directed to make a rest, he ascertains all receipts and payments, strikes the balance, and adds to

or takes from the last year's balance ; and *that* is the balance· upon which interest is to be calculated for the next year." (*Raphael* v. *Boehm*, 11 *Vesey Ch. Rep.* 100, 111.) 2. Neither the law, nor the judgment, entitles the executors to interest upon the sums advanced by them for the plaintiff's support and education. *Allowances* may be made to them, out of the assumed income with which they were charged, for all· those advances ; but upon no principle is interest ever allowed to a trustee for his disbursement of the trust moneys in hand. 3. The order confirming the referee's report should be overruled, and the plaintiff's exceptions thereto allowed.

XII. The judgment below should be modified in the particulars indicated in the plaintiff's exceptions ; in all other respects it should be affirmed, with costs.

*S. P. Nash* and *Geo. DeForest Lord,* for the defendants. I. The conclusion of law, that the trustees' executors were bound to invest the legacy in stocks of the United States or of the state of New York as the only lawful investments, is erroneous. 1. Loans on real securities of bond and mortgage would by this rule be disallowed, contrary to all the received doctrine as to trust investments. 2. The counsel of the plaintiff admitted that the bonds of the Hudson River Railroad, the New York Central Railroad, the Delaware and Hudson Canal Company (being secured· by mortgages,) were unexceptionable. 3. No authority as to a trustee investment can be found which disallows a bond secured by an adequate mortgage of real estate. But if other real securities could be introduced by way of supposed exception into the rule as incautiously expressed by the judge, still there were no improper investments.

II. By the terms of the will the testator *entrusted to their* (the executors) *discretion,* "the settlement of my affairs, *and the investment of my estate for the benefit of my heirs."* 1. No words can be more express to give a discretion to his friends and associates in business, and whose character and

King *v.* Talbot.

prudence he knew. 2. By the rule of the judge there was no alternative, and consequently no discretion possible. To limit the terms to a choice between the stocks of the United States and the state of New York, is wholly insufficient to answer the language of the will. 3. If by a positive rule, New York and United States stocks only had been intended to be permitted, it was misleading the executors to present an ambiguity of this kind ; that it did mislead them, if so understood, is plain from the fact that, with no motive, they honestly fell into the investments they made from the use of language giving express discretion. 4. The relations of the testator to the defendants call for a liberal construction of words of confidence. He confided in their integrity, in their business knowledge and habits, and knew their views as to investments. He was a merchant ; they were merchants, and had long known each other. 5. In the cases hereinafter referred to, especially *Ackerman* v. *Emott,* the knowledge of the usual investments of the party bore with weight on this question of interpretation. 6. To invite a discretion, on which the executors might act, when none is to be granted, is wholly inadmissible in the interpretation of a will made in China, and showing no technical preparation, even to the absence of subscribing witnesses. 7. "To compel trustees to make up a deficiency not caused by their willful default is the harshest demand that can be made in a court of equity." *Lord Hadwicke, in Jackson* v. *Jackson,* (1 *Atk.* 514,) "As a trustee ought not to gain, he should not lose, by his trust and services for others ; a jealous severity which deters prudent men from accepting these trusts, and a lax indulgence, which would invite men to accept them for their gains, are extremes which are equally inexpedient." (*Per Ch. Sanford, see Hopkins R.* 426, 427.)

III. The investments as actually made were not contrary to any rule of law as to trustee investments. 1. It is to be noticed that they are made on securities resting on specific property, real or personal, and not on mere individual respon-

sibilities. The rule as laid down by Story (2 *Eq. Jur.* §§ 1, 274,) is, that courts of equity require security to be taken on real estate, *or on something of permanent value.* The distinction admits, that personal·property may be the basis of trust securities as well as real estate. 2. The reasoning of Judge Putnam in *Harvard College* v. *Amory,* (9 *Pick.* 460,) is, in principle, convincing on this subject. 3. The rule as laid down by the judge at special term is not the law of this state, by any authoritative adjudication. Attention is called to the history of the ruling on this subject. The rule that a trustee may not rest on a mere personal obligation is admitted and well understood. In *King* v. *King,* (3 *John. Ch.* 552,) an executor was charged for a sale of land without any security but an individual note. In *Smith* v. *Smith,* (4 *John. Cas.* 281,) Chancellor Kent shows no knowledge of any absolute rule, other than due diligence. In *Ackerman* v. *Emott,* (4 *Barb.* 626,) no authority in this state is cited either by counsel or judge to show that, observing the rules of honesty and good faith, a trustee is precluded from every thing but public debt. That case (decided, in fact, after these investments in question were made,) rested wholly on the English rule of British funds. This was established as a mere rule of local law in England. (*See Trafford* v. *Boehm,* 3 *Atk.* 444 ; *Howe* v. *E. of Dartmouth,* 7 *Ves.* 151 ; *Hancom* v. *Allen,* 2 *Dick.* 497, *as to the origin of the rule of court.*) There was never any such rule by order of court or judicial or legislative decision in New York, prior to Ackerman's case. In that case the court proceeded on the testator's usage as to his investments ; and, still more on the fact, that the executor had made the investment in stock furnished by himself. (*See the opinion of Judge Strong, p.* 649.) In Pennsylvania a statute was passed March 29, 1832, which regulated trustee investments in that state, and the cases there are founded on that statutory rule, which has since been followed there, and are of no authority here. (*See Worrall's appeal,* 9 *Penn. Rep.*

511.)   In Massachusetts, the rule is fully discussed by Chief Justice Shaw, in *Lovell* v. *Minot*, (20 *Pick.* 119,) and shown to be local in England and not applicable to this country. (*See also Harvard College* v. *Amory*, 9 *Pick.* 446.) It is also to be considered, whether the supposed rule in Ackerman's case excludes all public securities, including Ohio, Massachusetts, and other state stocks ; or whether, indeed, any such rule of investment can be deemed to have been established without some act of the legislature. In England it is not a rule of the common law, but one resting on special local statutes not re-enacted or adopted in this country.. On principle, therefore, we submit, that there is no such rule as the judge applied, and that his decision in this respect is erroneous.

IV. If the rule be, that the investments in this case should have been either in United States or New York stocks, still the judgment for seven per cent interest with annual rests was erroneous. 1. The law makes a clear distinction in dealing with a trustee, where he has acted with good faith and on reasonable grounds, and with no personal benefit to himself, but erring through ignorance or mistake ; and, where he has acted for his own interest and gain, or fraudulently. In the first case the remedy is mere indemnity, measured by making good the subject, as if the trustee's duty had been performed according to the rule. In the latter cases it is retributive and punitive in its redress. (*See the discussion of Lord Cranworth in Robinson* v. *Robinson, 9 En. Law & Eq.* 74, *in* 1851, *reviewing all the English cases.*) 2. Here, if the investment had been made in New York state stocks or United States public debt, the price of the same with interest received would have been less than the amount actually realized. 3. As the trustees acted with right intentions, even if in mistake, there is no rule of policy or of equity to require more than an indemnity to the legatee.

V. Compound interest, or the principle of a punitive

judgment, is never applied, except to *intentional* violation of duty, or to investments in which the trustee served his own interest. 1. The cases support this rule : In *Acker-man* v. *Emott*, although the executor purchased his own stock illegally, he was charged with simple interest only. In *De Peyster* v. *Clarkson*, (2 *Wend.* 77,) although the guardian had used the money, the court refused interest on interest. The decree went no farther than to apply the interest to the bearing of the infant's expenses instead of the reduction of principal ; the court expressly refused interest on balances of interest. (*See Sutherland's opinion, p.* 106.) 2. *See also Rapelje* v. *Norsworthy*, (1 *Sandf. Ch.* 399,) where compound interest was refused ; because, although the funds were not invested, yet the trustee was not shown to have used them. And he was allowed his commissions. And was charged with interest on amounts invested only, when they amounted to $1000. (*Also, Meacham* v. *Sternes*, 9 *Paige*, 398.) 3. The duty of the trustees was no more nor other than the ordinary duty of a guardian ; it was not a direction to invest in any particular stock, and falls under only the ordinary rule as to surpluses of an infant. There is no express trust to accumulate contained in this will, nor any expressions which impose upon the trustees any other than their ordinary duties in that respect.

VI. The judge rightly discarded the rule that the plaintiff could claim the profits on some investments and the losses on others. 1. The plaintiff, by her express tender in the note of her counsel annexed to the complaint, held all the securities for the defendants, and all her claims rested on that admission. 2. Where the trustee has acted in good faith, with no personal interest, and from a mistake as to the general power as executor, the whole administration must be taken as one—all affirmed or all rejected. It was, if mistake, one mistake only, and to be treated as an entirety. 3. The rule of giving the *cestui que trust* an election, is designed only to protect against breaches of trust to the profit, or by

the actual fraud, of the trustee. It is not to be applied to support inconsistent claims, that the administration by the trustee, made with a single purpose, has been partly fraudulent and partly upright ; contrary to the fact. (*Heathcote v. Holmes,* 1 *Jac. & Walker,* 122.)

VII. The subordinate rulings of the judge and of the referee in favor of the defendants, should be adopted and affirmed.

VIII. The judgment should be reversed, and the reference should be conducted on the principles claimed by the defendant. The costs are in the discretion of the court.

*By the Court,* SUTHERLAND, J. The thirteenth and fourteenth findings of fact appear to be authorized by the evidence, and being so, I cannot doubt that the first conclusion of law is correct. Indeed, in the case of Anna Henrietta King, the defendants do not appear to question the correctness of either of these findings of fact, or of the first conclusion of law.

The eighth finding of fact, to the effect that the stocks and bonds in which the investments were made, were in good repute, and were considered safe and desirable investments, and that the investments were made in *good faith,* the defendants having invested their own funds in similar stocks, is not inconsistent with the personal liability declared in the last clause of the second conclusion of law, and in the first sentence of the fourth conclusion of law, provided the investments were unauthorized and a breach of trust. It is true a breach of trust, though in good faith, and without any actual or criminal intent to defraud the *cestui que trust,* is in equity a *constructive fraud* upon the *cestui que trust,* but it is plain that the judge in wording the eighth finding of fact, had not in his mind a constructive fraud, but fraud in fact, or fraudulent intent as distinguished from good faith, or an honest intent.

If the investments in the stocks and bonds mentioned in

the fifth and twelfth findings of fact were unauthorized, and a breach of trust, and invalid, considering that the trust was not only for investment of the plaintiff's legacy, but also for the accumulation of any surplus *interest* not required for her maintenance and education, I am not willing to hold that the direction to charge the defendants with the amount of the plaintiff's legacy, with interest to be computed with annual rests, was erroneous or inconsistent with the finding before referred to ; that the investments were made in good faith. I see no other way in which the plaintiff could be fully and correctly indemnified for the consequences of the breach of trust.

The cases referred to by the counsel for the plaintiff in his fifth point, seem to establish the principle that where a trustee fails to execute a trust to invest money, for the maintenance of an infant during minority and to *accumulate* the surplus income of the investments, equity will charge interest against him *with rests,* though he may not have used the trust money, and independent of any question of intention.

This principle appears to have been acknowledged by Justice MILLER, in *Lansing* v. *Lansing,* (45 *Barb.* 190,) he says, " The will required that the interest should be invested, and *if it had been made to appear, in any way, that the executor had neglected to perform the duty enjoined upon him in this respect,* and that the fund had suffered by reason of it, or that more could have been realized than was done, then he should be liable for compound interest."

The defendants cannot complain, and do not complain, that they were charged with interest from the end of a year after the testator's death, and not from the day of his death ; but the plaintiff does complain of this, and there are cross-appeals.

The general rule is no doubt as the counsel for the plaintiff states it, " that when a *parent* bequeaths a sum of money to *a child* and provides for its maintenance *out of the*

King *v.* Talbot.

*interest* of such legacy, and makes no other provision for its maintenance, such legacy will carry interest from the testator's death ;" but considering the situation of the testator's estate in this case at the time of his death, and sometime after, and other undisputed circumstances, I do not think the judgment should be modified, so as to favor the plaintiff in this respect.

I do not see how the accounting could have started from the 1st day of April, 1850, (when the stocks and bonds mentioned in the fifth finding of fact were set apart for the children,) on the theory that the defendants then accounted for, or settled, or paid the interest on the legacies up to that date, without ignoring the principle that it was the duty of the defendants to have invested the legacies and any surplus interest before that time.

Without noticing especially the exceptions to some subordinate rulings of the judge, and of the referee who took the account, it follows, from what has been said, that I am of the opinion that the judgment should be affirmed, unless the plaintiff was bound to accept the stocks and bonds nominally or formally transferred to her by the defendant Talbot, as or for her legacy with its accumulations ; that is, unless the defendants were authorized in the execution of their trust, to make such investment of the trust fund. The judge held they were not, and that the plaintiff was not obliged to accept the stocks and bonds.

Charles W. King, the testator, died the 26th of September, 1845, leaving three children, all minors, the plaintiff being some months over five years of age. By his will he gave to each of his three children " the sum of $15,000, the *interest* on the same, *so far as required* to be applied to their maintenance and education, and the *principal*, with *the accumulations thereof*, to be paid to them severally on their majority." He appointed five executors, "entrusting to *their discretion* the settlement of my affairs, and the invest-

ment of my estate for the benefit of my heirs." The defendants, two of the executors named, qualified.

There is no doubt that trustees are not liable for any loss arising from an investment according to a direction in the trust instrument "as to the particular mode and nature of the investment." (*Hill on Trustees,* 368 )

There is no doubt, that it is a settled rule of the English court of chancery, when the *cestuis qué trust* are adults, that the investment must be made in the public funds, or in real estate securities, *though the trust instrument, as in this case expressly commits the investment to the discretion of the trustee.* (*See Hill on Trustees,* 363, 369, 378, 395, *and the English cases cited by the counsel for the plaintiff in his fourth point.*)

The result of the English cases, is, where the investment is left to the general discretion of the trustee, that nevertheless, the investment must be made within the rule requiring the investment to be made in the public funds, or in real estate securities. (*See Hill on Trustees,* 368, 369, *and the English cases cited in subd.* 3, *of the fourth point of the counsel for the plaintiff.*)

It seems to be the settled rule of the English court of chancery,' "and one that is never varied without special circumstances," that trust money belonging to an infant must be invested "in three per cents." (*Hill on Trust.* 369. *Norbury* v. *Norbury,* 4 *Mad.* 191.)

In New Jersey, the English rule requiring the investment to be in real or public securities, would appear to have been adopted by analogy. (*Gray* v. *Fox, Saxton Rep.* 259.) So also in Pennsylvania. (*Hemphill's appeal,* 18 *Penn. Rep.* 303. *Worral's appeal,* 23 *id.* 44.)

In Massachusetts, the English rule was discussed by Chief Justice Shaw, in *Lovell* v. *Minot,* (20 *Pick.* 119,) and he seemed to think that the rule was not adapted to this country. (*See also Harvard College* v. *Amory,* 9 *Pick.* 446.)

King *v*. Talbot.

As to New York, in *Smith* v. *Smith*, (4 *John. Ch.* 284,) Chancellor Kent, without adopting the English rule, or laying down any rule, said "I have no doubt it is a wise and excellent general rule, (referring to the English rule,) that a trustee loaning money, must require adequate real security, or resort to the public funds." (*See also King* v. *King,* 3 *John. Ch.* 552.)

I think it may be said that the English rule was adopted, by analogy, in *Ackerman* v. *Emott,* (4 *Barb.* 626,) and that a rule was laid down in that case, that in the absence of specific directions in the trust instrument, trust funds must be loaned on or invested in real estate securities, or invested in government securities or stock. Judge Strong says, (*p.* 648 ;) "That (the English rule) would sanction the investment of the moneys of the the *cestui que trust* in loans on real security, or in the public stocks of this state, or of the United States, and also, under the rules of this court, in loans to the New York Life Insurance and Trust Company."

Judge Strong does not say, neither did Vice Chancellor Parker in his opinion say, that the adoption and enforcement of the English rule in this state, so far as applicable, or as political circumstances here would allow, would exclude an investment in Ohio or Virginia stocks, or in the stocks of any state except New York, but my inference from the opinions is, that they meant to approve of a rule which, as to public stocks, would exclude an investment in the stocks of any other state.

Perhaps *Ackerman* v. *Emott* should be regarded as recognizing the former adoption in this state of the principle of the English rule, and the necessity for some rule.

In many of the United States, there are statutes authorizing the investment of trust funds in particular stocks. In Pennsylvania, by act of 29th March, 1832, where an executor, guardian, or trustee has trust moneys waiting investment, he may apply by petition, stating the circumstances, to the orphans' court of the proper county, and the court may order

the moneys to be invested in the stocks or public debt of the United States, in the public debt of the commonwealth, or of the city of Philadelphia, or on real securities. By subsequent acts, passed in 1838, 1850 and 1851, the provisions of the act of 1832, were extended to certain other stocks.

In Maine, (*R. S. ch.* 3, § 11,) the court of probate and Supreme Court may authorize the investment of trust moneys in real estate, or in *any manner most for the interest of all concerned.* There are similar provisions in the Vermont and New Hampshire Revised Statutes.

In Georgia, (*Cobb's New Dig.* 333,) the investment may be made in stocks, bonds, or other securities issued by the state. (*And see Rev. Code of New Jersey,* 209, *&c.*; *R. S. of Missouri,* 551; *and R. S. of Michigan,* 301.)

Some of these statutory provisions would seem to indicate the policy of controlling even the discretion of courts as to the investment of trust funds, and all of them would seem to indicate the necessity of some rule, and the policy of not permitting trustees to deal with trust funds as with their own.

Upon the whole, I am not willing to hold that the defendants were authorized to invest in the stocks and bonds mentioned in the fifth and twelfth findings of fact, and that the plaintiff was bound to accept the stocks and bonds mentioned in the twelfth finding of fact as or for investments of her legacy, with its accumulations of interest.

The discretion given to the executors by the will, was the discretion of trustees over a trust fund to be invested for the benefit of infants, and they were to be maintained and educated out of *interest,* not out of dividends; and any surplus income to be accumulated, was surplus of interest, not of dividends.

It will not do to say, that a trustee can deal with trust funds as with his own, and that he is to be excused if he invests them as he does his own, in railroad, petroleum, or

It is not true, either in morals or law, that a trustee is not bound to take greater care of trust funds than he takes of his own. The confidence put in him obliges him morally and legally to take greater care of trust funds entrusted to him than he takes of his own. He has no right to speculate with trust funds ; and every investment in stocks of a railroad, mining, banking, or other private corporation must be looked upon as an *adventure.*

I do not think railroad bonds, though nominally secured by mortgage on track and rolling stock, should be regarded as real security within any rule adopted, or to be adopted. The payment of interest upon them is dependent upon the successful operation of the road ; and the successful operation of the road is dependent in a great measure upon its management ; and in case of foreclosure, the small bondholders usually become the victims of the management and combinations of a few of the large bondholders. Besides, railroad charters, like other private charters, are liable to be forfeited, and most of those given by this state are liable at any time to be arbitrarily repealed by the legislature.

My conclusion is, that the judgment should be affirmed, without costs to either party, on these cross-appeals.

I should have been quite as well satisfied with the interlocutory decree, if it had directed the interest, in taking the account, to be calculated at six per cent, with annual rests. But no doubt our decision will be reviewed, and perhaps it is better that the Court of Appeals should modify the decree in that respect, if it thinks proper to do so.

The other two cases, of Charlotte E. King against the same defendants, and of Arthur King against same defendants, are substantially like this, and I think the same order should be made in both those cases.

[NEW YORK GENERAL TERM, November 4, 1867. *Leonard, Clerke* and *Sutherland,* Justices.]